UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

               Petitioner,

      v.

ANTHEM, INC.,

               Respondent.

Misc. Proceeding: 1:18-mc-00379-GBD

---

## DECLARATION OF JAMES A. BOWMAN IN OPPOSITION TO THE GOVERNMENT'S PETITION TO ENFORCE CIVIL INVESTIGATIVE DEMAND 18-46

I, James A. Bowman, do hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 the following:

1.      I am an attorney admitted *pro hac vice* to practice before this Court and am an attorney at O'Melveny & Myers, LLP, which represents Anthem, Inc. in this matter.  I submit this declaration in support of Anthem's Opposition to the Government's Petition to Enforce Civil Investigative Demand 18-46.  I have personal knowledge of the facts set forth below.

### The Government's Investigation of Anthem's Chart Review Practices

2.      In December 2016, the United States Department of Justice served Anthem with a Civil Investigative Demand seeking information regarding Anthem's chart review practices.  In or about January 2016, my colleagues and I spoke with DOJ Trial Attorney Carol Wallack, who informed us that the government was investigating whether Anthem compares the results of its retrospective chart reviews against other diagnosis codes on file with Centers for Medicare & Medicaid Services ("CMS") in compliance with *United States ex rel. Swoben v. United HealthCare Ins. Co.,* 848 F.3d 1161, 1175 (9th Cir. 2016).  Over the past eighteen months of this

investigation, the government has issued eleven CIDs to Anthem.  In response, Anthem has produced thousands of documents, answered nearly 50 separate interrogatories, presented witnesses from Anthem for multiple days of deposition testimony, and provided more than 100 gigabytes of requested data.

3.      On December 15, 2016, the government issued CID No. 16-418, which included six interrogatories (including twenty-eight subparts) and nine separate document requests seeking information regarding Anthem's retrospective chart review and risk adjustment practices over a ten-year period.  My colleagues and I had at least ten meet and confer discussions with government counsel (and additional written exchanges) to identify the government's priorities and address the scope of the requests in the CID based on those priorities.

4.      Based on agreements reached during those discussions, Anthem began producing documents on January 31, 2017, only a few weeks after its first meet-and-confer discussion with government counsel.  Anthem supplemented this initial production with additional productions and responses on (a) February 28, 2017, (b) March 31, 2017, (c) May 22, 2017, (d) June 30, 2017, (e) July 31, 2017, (f) August 31, 2017, (g) November 22, 2017, (h) January 11, 2018, and (i) April 2, 2018.  Anthem's productions, as well as its responses to more than two dozen interrogatories (including subparts), provided data regarding the results of the chart reviews conducted by Anthem through its third party vendor, Verscend Technologies, Inc., as well as extensive information regarding its chart review program.

**The Government's Demands for Tolling Agreements During Its Investigation**

5.      On June 1, 2017, at the government's request, Anthem signed an agreement with the government to toll the statute of limitations for any claims against Anthem under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, and other related statutes, for approximately one year

(December 15, 2016 through January 1, 2018) to allow the government additional time to conduct its investigation.

6.      The government did not request an extension of the tolling agreement by January 1, 2018, when the tolling agreement between Anthem and the government expired.

7.      On February 5, 2018, five weeks after the initial tolling agreement had expired, government counsel asked Anthem to agree to retroactively extend the prior tolling agreement by an additional six months, up to and including July 1, 2018.

8.      In February 2018, DOJ Trial Attorney Wallack informed me and my colleagues that the United States Attorney's Office for the Southern District of New York ("SDNY") would be taking the lead on the investigation of Anthem's retrospective chart review practices.

9.      During a call with DOJ Trial Attorney Wallack, as well as Assistant United States Attorneys Li Yu and Rachael Doud, government counsel informed me and my colleagues that SDNY would move forward with additional CIDs to obtain information to draft and file a complaint related to Anthem's chart review practices.

10.     On March 15, 2018, my colleagues and I notified government counsel that Anthem declined the government's request to extend the prior tolling agreement.  Government counsel requested that Anthem reconsider and asserted that unless Anthem agreed to extend the tolling agreement, the government would make adverse inferences regarding the facts that it learned during its investigation.  Nevertheless, Anthem maintained its position against extending the prior tolling agreement.

**Meet and Confer with the Government Regarding Deposition Topics in CID 18-46**

11.     The government served CID No. 18-46 on Anthem on March 22, 2018.  This CID demanded deposition testimony within three weeks regarding five broad topics spanning a nine-

year period.  True and correct copies of CID No. 18-46 and the accompanying cover letter are attached hereto as **Exhibit A** and **Exhibit B** respectively.

12.     From the time that we received this CID, to the date that the government filed the petition to enforce, my colleagues and I requested to meet and confer with the government (in writing and over the telephone) regarding topics 3(iii), 4, and 5 no fewer than eleven times, without success.  The government has either refused or ignored each request.  In the meantime, the government has issued nine additional CIDs to Anthem.

13.     On March 30, 2018, just one week after the government served CID No. 18-46, my colleague David Deaton sent the government a detailed twelve-page letter explaining Anthem's concerns with the government's requests.  A true and correct copy of this letter is attached hereto as **Exhibit C**.  In this letter, Mr. Deaton explained, for example, that there were more than 8,600 separate diagnosis code / date of service combinations for the twelve Anthem members included in the deposition topics during the relevant time period.  Mr. Deaton concluded that letter with Anthem's ***first*** invitation to meet and confer regarding all of the deposition topics in CID No. 18-46.

14.     Over the next few weeks, we engaged with government counsel in several productive meet and confer telephone calls on April 4 and April 23 regarding Topics 1, 2, 3(i) and 3(ii) from CID No. 18-46, but the government declined to discuss the concerns Anthem raised with respect to the topics at issue in this petition -- Topics 3(iii), 4 and 5.

15.     For example, on April 4, 2018, the parties had a meet and confer telephone call. During that call, government counsel declined to address Anthem's concerns regarding topics 2 through 5, and instead asserted that the government could potentially narrow the deposition topics if Anthem provided additional information (not otherwise requested in the most recent

CID) that would be useful in tailoring the deposition topics.  During that call, my colleagues and I agreed to provide the government with that additional information.

16.     The following day, in an April 5, 2018 letter, I memorialized our understanding of the agreements reached during the April 4, 2018 meet and confer discussion.  In that letter, I extended Anthem's **second** invitation to discuss "appropriate ways to narrow the scope of Topics 2 through 5."  A true and correct copy of that correspondence is attached hereto as **Exhibit D**.

17.     Less than one week later, on April 16, 2018, I provided the additional information the government had requested during the prior meet and confer discussion and invited the government (for the **third** time) to discuss the scope of the remaining topics after the government had an opportunity to review the information Anthem had voluntarily provided.  A true and correct copy of that correspondence is attached hereto as **Exhibit E.**

18.     Three days later, on April 19, 2018, my colleague David Deaton sent a letter to the government extending Anthem's **fourth** invitation to "discuss the scope of CID Topics 2 through 5" in advance of the first deposition regarding topic 1, which had been scheduled for April 25, 2018.  A true and correct copy of that letter is attached hereto as **Exhibit F**.

19.     On April 23, 2018, my colleagues and I again had a discussion with government counsel, hoping to discuss concerns Anthem had first raised a month earlier regarding the scope of Topics 2 through 5.  During this call, however, rather than addressing how the information Anthem had voluntarily provided could assist the government in narrowing the remaining topics in CID No. 18-46, government counsel requested an entirely new set of information that had also not been requested in the CID.  When I asked government counsel to explain how the requested information would enable the government to narrow the scope of the remaining topics,

government counsel declined to explain how the information would assist them in narrowing the scope of the requests.

20.     On April 24, 2018, my colleague David Deaton sent government counsel a letter memorializing our meet and confer discussion from the day before, and also extended Anthem's *fifth* invitation "to work together to determine ways to potentially modify or narrow Topics 2 through 5." A true and correct copy of that letter is attached hereto as **<u>Exhibit G</u>**.

21.     On April 25, 2018, Anthem produced an Anthem Actuarial Director for deposition testimony by the government on topic 1. After the deposition was concluded, my colleagues and I again attempted to address the vagueness and unreasonable scope of the remaining topics, including topics 3(iii), 4, and 5. Based on the government's assertion during this discussion that its priority was moving forward with deposition testimony on topics 2, 3(i), and 3(ii), we agreed to defer meet and confer discussions regarding the remaining topics (*i.e.*, the topics at issue in the government's current petition) to a later date.

22.     On June 6, 2018, Anthem produced another corporate designee, an Anthem Senior Manager for Reporting and Data Analysis, to testify regarding Topics 2, 3(i), and 3(ii). During this deposition, government counsel repeatedly asked questions that were undisputedly outside the scope of the designated topics that the witness was designated to address during his testimony. After it became clear that this was not an isolated problem, I objected to government counsel's repeated line of questioning outside the scope of the designated topics, and beyond the scope of what Anthem had provided the witness to testify about. In response, during a break in the deposition, government counsel asserted that she "didn't care" about Anthem's objections to the scope of the government's deposition topics or how the objections had purported to narrow those topics. On June 19, 2018, in response to the government's request to move forward with

the remaining deposition topics, I sent government counsel a letter expressing concerns regarding the government's approach at the prior deposition and requesting a meet and confer discussion about future depositions.  A true and correct copy of that letter is attached hereto as **Exhibit H**.

23.     On June 28, 2018, after not receiving a response from government counsel to my prior letter, I sent an email to government counsel extending Anthem's ***sixth*** invitation to meet and confer so that the parties could "address the concerns we have raised regarding the prior deposition, or the vagueness and scope problems previously raised regarding Topics 3(iii), 4, and 5."  A true and correct copy of that email correspondence is attached hereto as **Exhibit I**.

24.     The following day, on June 29, 2018, having been unsuccessful in addressing Anthem's concerns regarding the remaining deposition topics (topics 3(iii), 4, and 5), Anthem served its objections and responses to these topics and proposed affirmative testimony that Anthem could offer related to the focus of the government's investigation.  A true and correct copy of Anthem's objections and responses is attached hereto as **Exhibit J**.  At the same time, I sent an email to government counsel extending Anthem's ***seventh*** invitation to meet and confer about Anthem's objections and the scope of the remaining deposition topics.  A true and correct copy of that email correspondence is attached hereto as **Exhibit K**.

25.     Over two weeks later, government counsel sought to schedule dates for depositions on the remaining topics, without addressing the concerns that Anthem had raised in its objections and prior correspondence.  In a July 18, 2018 email, I responded to government counsel, asking them to confirm whether the government accepted Anthem's proposed scope for Topics 3(iii), 4, and 5.  If so, I offered to move forward with scheduling the deposition.  If not, I

extended Anthem's *eighth* invitation "to discuss the proper scope of these topics."  A true and correct copy of that email correspondence is attached hereto as **Exhibit L**.

26.     On July 21, 2018, government counsel responded that the government had "serious concerns about some of the scope limitations Anthem purports to impose," but did not propose any alternative testimony or accept Anthem's offer to meet and confer to resolve the scope of the remaining deposition topics.  A true and correct copy of the government's email correspondence is attached hereto as **Exhibit M**.

27.     On July 25, 2018, the government again requested to schedule the deposition on the remaining topics from CID 18-46 without resolving Anthem's stated objections or concerns regarding their scope.  Instead, the government reiterated its position that Anthem should simply raise any objections it had regarding the scope of the topics during the deposition itself, and then litigate any disputes at a later date.   A true and correct copy of the government's email correspondence is attached hereto as **Exhibit N**.  In an email response later that same day, I reiterated Anthem's position that "any dispute regarding the scope of the topics must be resolved in advance of the depositions."  I explained that this was necessary, not only so that Anthem could prepare a corporate designee, but also to enable Anthem to even identify an appropriate witness for the deposition.  I also extended Anthem's *ninth* invitation to meet and confer regarding the scope of the remaining deposition topics.  A true and correct copy of that email correspondence is attached hereto as **Exhibit O**.

28.     On August 1, 2018, after I made clear that Anthem would not go forward with testimony until the parties addressed Anthem's concerns about the remaining topics, government counsel provided the government's first substantive response to the concerns Anthem had raised over four months earlier.  While confirming that the focus of the government's investigation was

"whether Anthem executed its 'retrospective [chart] reviews… deliberately to avoid erroneously submitted diagnosis codes that might otherwise have been identified with reasonable diligence,'" government counsel continued to demand much broader testimony regarding any policy, procedure, training, and personnel that Anthem relies on to ensure that diagnosis data submitted to CMS from **provider-submitted claims** (without any connection to chart reviews) is also accurate. This correspondence from the government did not explain how this broad, unfocused inquiry into the overall accuracy of the millions of codes that Anthem receives from providers and submits to CMS each year relates to the stated subject matter of its investigation. The government's correspondence also ignored Anthem's prior invitations to meet and confer in person or by phone about the disputed topics to resolve these issues. A true and correct copy of the government's April 1, 2018 letter is attached hereto as **Exhibit P**.

29. In an August 8, 2018 letter responding to the government, I extended Anthem's **tenth** invitation to meet and confer regarding the issues raised in the government's prior letter and the remaining deposition topics. I also provided clear authority to the government that resolving the scope of the topics before the depositions took place was essential and that any dispute over the scope could not be deferred well after the depositions had taken place. A true and correct copy of this correspondence is attached hereto as **Exhibit Q**.

30. On August 9, 2018, in the midst of the parties' ongoing dispute over the scope of CID No. 18-46, the government propounded seven additional CIDs for testimony from individual Anthem employees, which it claims are targeted at investigating Anthem's purported *scienter*. In its correspondence attaching the new CIDs, the government reiterated that the document requests and interrogatories contained in CID No. 18-88, which the government had

previously issued on June 12, 2018, were targeted at investigating Anthem's purported *scienter*. A true and correct copy of this correspondence is attached hereto as **Exhibit R.**

31.     On August 10, 2018, the government sent a letter to Anthem rejecting its attempt to discuss the scope of the testimony for the remaining topics from CID No. 18-46.  In this letter, government counsel asserted that there was no reason to believe that "further meeting-and-conferring" would resolve the parties' impasse.  A true and correct copy of this letter is attached hereto as **Exhibit S**.

32.     On August 15, 2018, I sent a letter responding to the government, noting that the parties had never had a meet and confer in person or by phone regarding the remaining topics from CID No. 18-46.  Believing that it was still possible to resolve at least some disputes regarding the scope of these topics, and therefore resolving or otherwise narrowing any dispute without need for court intervention, I extended Anthem's *eleventh* invitation to meet and confer regarding the remaining deposition topics.  A true and correct copy of this letter is attached hereto as **Exhibit T**.

33.     On August 27, 2018, the parties met and conferred regarding entirely separate document requests in CID No. 18-88.  During that meet-and-confer discussion, the parties agreed to negotiate the appropriate scope for the document requests in CID No. 18-88 and to discuss a plan for producing documents in response to that CID.

34.     Attached hereto as **Exhibit U** and **Exhibit V** are two redacted documents that I obtained from the administrative record filed via CM/ECF in *UnitedHealthcare Ins. Co. v. Azar*, 1:16-cv-00157-RMC (D.D.C. Oct. 2, 2017) (ECF 44-3 and 44-4), titled "Model Calibration Factor" and "Three RADV Policy Issues," respectively.  To the best of my knowledge, these

documents were authored by staff at CMS and were disclosed in the course of Freedom of Information Act ("FOIA") litigation.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 4th day of September, 2018 in ___Goleta , CA___.


_____
JAMES A. BOWMAN