# Exhibit H



O'Melveny & Myers LLP
400 South Hope Street
18th Floor
Los Angeles, CA 90071-2899

T: +1 213 430 6000
F: +1 213 430 6407
omm.com

File Number:

June 19, 2018

**Jim Bowman**
D: +1 213 430 6569
jbowman@omm.com

**VIA E-MAIL AND FEDEX**

Assistant United States Attorney Li Yu
Assistant United States Attorney Rachael Doud
Assistant United States Attorney Peter Aronoff
United States Attorney's Office for the Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007

Re:     *Civil Investigative Demand 18-46*

Mr. Yu, Ms. Doud and Mr. Aronoff:

We write in response to your June 12, 2018 email proposing that we meet and confer to discuss the date, time and focus for testimony by an Anthem representative on Topics 3(iii), 4, and 5 of the above-referenced Civil Investigative Demand No. 18-46 (the "CID").

Before we proceed with discussion of potential testimony on those topics, we would like to raise concerns about the government's conduct during the June 6, 2018 deposition of ███████ ███████, the representative Anthem put forth to testify regarding CID Topics 2, 3(i), and 3(ii). We are deeply troubled by government counsel's explicit disregard of the scope of these deposition topics (as they were defined through our meet-and-confer process and Anthem's May 31, 2018 Objections and Responses to the CID, to which the government neither objected nor sought to negotiate before the deposition).

We made extensive efforts to raise our concerns with you regarding the overbroad scope of these topics and to try to resolve these issues in advance of any witness appearing for testimony. On March 30, 2018, more than two months before ███████' deposition, we sent you a letter detailing our concerns about the extreme breadth of the information sought by the CID. In the letter, we described in great detail how the "collective scope of the topics (particularly Topics 2 through 5) is massive and appears in many respects to be completely unrelated to what we understand you are actually seeking for the investigation you are conducting into Anthem's retrospective chart review program."

We invited you in that letter to work with us regarding the scope of these topics, so that we could identify areas where a witness could potentially provide the government with information needed for its investigation. In these discussions, you made clear that for Topics 2, 3(i), and 3(ii), you were interested in understanding the process at Anthem for submitting diagnosis codes to CMS through RAPS, as well as understanding whether there was a process

O'Melveny

at Anthem to compare the results of the Anthem Chart Review Program against the diagnosis codes that were already on file for the same members.

During a telephone conference on May 3, 2018, we proposed an approach for these topics that we believed appropriately addressed your stated areas of interest.  During that call, you generally agreed with the proposed formulation and we committed to following up with a proposed draft for the scope of the testimony.  We also told you that we would be serving written objections and responses that confirmed the scope of the testimony the witness would be authorized to address at the deposition.  Shortly after that call, on May 7, we sent you a draft of the scope for these topics as discussed during the May 3 call, and the parties followed up through multiple email exchanges regarding these topics; at no point did the government suggest that it had concerns about the proposed scope for this testimony.  On May 31, 2018, we served objections and responses that detailed the scope of the testimony that the designated witness, ▮▮▮▮▮▮▮, would be prepared to provide on Topics 2, 3(i) and 3(ii).  These responses included compromises that we had reached with you during our meet and confer discussions to clarify the scope of the testimony.  We served these objections nearly one week before the deposition so that there would be adequate time for you to review the responses and raise any concerns you had about the scope of the testimony in advance of the deposition.  At no point after receiving the objections and responses did you object to the scope of testimony that the witness would be designated to address, nor did you raise any concerns regarding Anthem's objections or seek to renegotiate the scope.  Based on this extensive meet and confer process, Anthem relied on the fact that the government did not raise objections or concerns about the proposed scope of the testimony; had the government raised concerns regarding the scope, Anthem would have continued the meet and confer discussions (and, if necessary, sought relief from the court) before allowing ▮▮▮▮▮▮▮ to testify regarding these topics.

Despite having clear notice regarding what the witness was designated to testify about at the deposition, the government repeatedly asked questions that were undisputedly outside the scope of the designated topics that he was designated by Anthem to address during his testimony.  After it became clear that this was not an isolated problem, and as the government persisted in asking questions far beyond the scope, such as questions regarding (a) Anthem's Medicaid practices, (b) how the submission of diagnosis codes affects the revenue Anthem receives from CMS, and (c) the details of a supplemental program (the house call program) that had no connection to designated topics (because none of the Anthem members the government had selected had diagnosis codes submitted to CMS from that program), we objected and stated our concern that the government was deliberately ignoring the scope of the topics.

In response to one of our objections, the government asserted that it had never agreed to the scope of the topics as they had been defined in Anthem's objections and responses and persisted in asking the witness questions that were undisputedly beyond the scope of the topics (and Anthem's responses).  When we raised with the government during a break that the government had been disregarding the scope of the topics that the witness was designated to testify about at the deposition, government counsel responded that she "didn't care" how Anthem's objections had narrowed the scope of the deposition topics.



Later in the deposition, as government counsel repeated numerous questions that had been asked earlier in the deposition and that were well beyond the scope, we objected that the questions were an abuse of the CID deposition process and said that we would end the deposition if the abusive questioning continued.  Government counsel did not dispute that the questioning was beyond the scope, nor did she deny that the questions had been previously been asked and answered, but instead said that she would ask only one further question outside the scope before ending the deposition.

The government's conduct at this deposition was unacceptable.  The government made no effort to meet and confer over any concerns it may have had regarding Anthem's objections to the deposition topics or the scope of the testimony that the witness was being put forward to address at the deposition.  Instead, the government simply ignored them and persisted in asking dozens of questions that were undisputedly beyond the scope.

Because you now seek deposition testimony on CID Topics 3(iii), 4, and 5, we believe it is important to discuss the government's conduct during the ▮▮▮▮▮ deposition because Anthem will not permit the government to continue its practice of ignoring Anthem's objections and the scope of the topics at any future deposition.  We are available later this week, or early next week, to discuss these concerns.


Sincerely,

/s/

Jim Bowman
of O'Melveny & Myers, LLP